**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| BILLJCO, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 6:21-cv-00528-ADA |
| APPLE INC., | JURY TRIAL DEMANDED |
| Defendant. | |

**BILLJCO, LLC'S OPPOSITION TO**
**<u>APPLE'S MOTION TO TRANSFER</u>**

**PUBLIC VERSION**

39066418.10.docx

### TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 3

    A.    BillJCo, LLC.................................................................................... 3

    B.    iBeacons in Texas ......................................................................... 5

ARGUMENT ............................................................................................................. 6

I. The Private Interest Factors Favor Keeping This Matter In Texas. ....................... 7

    A.    The Relative Ease of Access to Sources of Proof Weighs Against Transfer.......... 7

    B.    The Availability of Compulsory Process Weighs Against Transfer..................... 8

    C.    The Cost of Attendance and Convenience for Willing Witnesses Weighs Against Transfer............................................................ 9

            1.    Apple's Witnesses.............................................................. 10

            2.    BillJCo's Witnesses .......................................................... 11

            3.    Third Party Witnesses ....................................................... 12

    D.    The "All Other Practical Problems" Factor Is Neutral. ......................................... 12

II. The Public Interest Factors Favor Keeping This Matter In Texas. ....................... 13

    A.    The Administrative Difficulties Factor Weighs Against Transfer....................... 13

    B.    The Local Interest Factor Strongly Favors Texas.............................................. 14

    C.    Familiarity With The Governing Law And Conflicts Of Law Are Neutral Factors.............................................................................. 15

CONCLUSION.......................................................................................................... 15

39066418.10.docx

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                   **Page(s)**

*Agis Software Dev. LLC v. Huawei Device USA Inc.*,
   No. 2:17-cv-513-JRG, 2018 WL 2329752 (E.D. Tex. May 23, 2018) .....................................9

*Atlantic Marine Const. Co. v. United States Dist. Ct. for W. Dist. Of Tex.*,
   571 U.S. 49 (2013) .............................................................................................................7

*Coronavirus Reporter v. Apple, Inc.*,
   No. 1:21-cv-047-LM, 2021 WL 1946428 (D.N.H. May 14, 2021) ...................................7, 11

*E. Texas Boot Co., LLC v. Nike Inc.*,
   No. 2:16-cv-0290, 2017 WL 2859065 (E.D. Tex. Feb. 15, 2017).........................................12

*Epic Games, Inc. v. Apple Inc.*,
   No. 4:20-cv-05640 (N.D. Cal.) ............................................................................................10

*Express Mobile v. Atlassian Corp.*,
   No. 6-20-CV-00805-ADA, 2021 WL 3355375 (W.D. Tex. Aug. 2, 2021) ....................13, 14

*Fintiv, Inc. v. Apple, Inc.*,
   No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ......................8, 10

*GUI Global Prods., Ltd. v. Samsung Elecs. Co., Ltd.*,
   No. 4:20-CV-2624, 2021 WL 3705005 (S.D. Tex. May 28, 2021)...............................7, 8, 11

*HD Silicon Sols. LLC v. Microchip Tech. Inc.*,
   W-20-CV-01092-ADA, 2021 WL 4953884 (W.D. Tex. Oct. 25, 2021).................................9

*In re Apple Inc.*,
   743 F.3d 1377 (Fed. Cir. 2014).............................................................................................8

*In re Google LLC*,
   No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...............................................14

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010).............................................................................................6

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ...............................................................................................10

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .................................................................................................6

*Koss Corp. v. Apple Inc.*,
  No. 6-20-CV-00665-ADA, 2021 WL 5316453 (W.D. Tex. Apr. 22, 2021) ...........7, 11, 12, 13

*Plexxikon, Inc. v. Novartis Pharmaceuticals Corp.*,
  No. 17-cv-4405 (N.D. Cal.) ...................................................................................................13

*Polaris Innovations, Ltd. v. Dell, Inc.*,
  2016 WL 7077069 (W.D. Tex. Dec. 5, 2016) .......................................................................14

*Solas OLED, Ltd. v. Apple Inc.*,
  No. 6:19-cv-00537-ADA, 2020 WL 3440956 (W.D. Tex. June 23, 2020) .......................7, 11

*Triller, Inc. v. Bytedance, Ltd.*,
  No. 6-20-CV-00693-ADA, 2021 WL 3913589 (W.D. Tex. July 9, 2021) .............................13

*Uniloc 2017 LLC v. Apple, Inc.*,
  No. 6:19-cv-00532-ADA, 2020 WL 3415880 (W.D. Tex. June 22, 2020) ...........................15

*Uniloc USA, Inc. v. Apple Inc.*,
  No. A-18-CV-992-LY, 2019 WL 2035583 (W.D. Tex. Apr. 8, 2019)...................................14

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(A), (B) .....................................................................................................9

## **INTRODUCTION**

If this patent lawsuit by a Texas company against a Silicon Valley-based company cannot be brought in Texas, then no case can. The plaintiff in this matter is BillJCo, LLC ("BillJCo"), a Texas company located approximately 100 miles from this Court. BillJCo was founded by Bill Johnson and has operated in Texas for over a decade. Mr. Johnson has lived in Texas for 40 years and developed the beacon technology at issue from his home in Texas along with his sons, who both reside in Texas. ███████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████

Apple subsequently developed its infringing "iBeacon" technology. Apple is a multinational technology company with a multi-billion dollar headquarters in Austin, Texas, outfitted with its own 192-room hotel for visiting employees. Apple assisted Austin-based SXSW, LLC ("SXSW") with the largest rollout of iBeacon technology in the world, and SXSW continues to serve as a showcase event for Apple's iBeacon technology. Another early adopter of the iBeacon technology was Texas Instruments ("TI"), which is headquartered in Dallas, Texas, less than 100 miles from this Court.

Despite these overwhelming ties to Texas and the Western District of Texas, Apple moves to transfer this matter to the NDCA based solely on Apple's convenience. In support of its motion, Apple submits the declaration of Mark Rollins, who has filed nearly-identical declarations in multiple other cases Apple sought to transfer away from Texas and other states. Mr. Rollins' carefully-worded declaration vaguely describes broad categories of documents that are either located in the NDCA "or" are remotely accessible from computers in the NDCA, leaving the parties and Court to guess where any of Apple's evidence is actually located. This

ambiguity has caused other courts to disregard Mr. Rollins' declarations entirely. The Court should do the same.

Mr. Rollins' declaration also identifies five witnesses that Apple contends will testify at trial. ███████████████████████████████████████ Proof of this exaggeration is the fact that Apple has identified multiple witnesses for the exact same topics. Apple has also identified its declarant, Mr. Rollins, as a likely witness, even though he (a) has only been with the company since late 2019, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

By contrast, BillJCo has identified real witnesses that will be significantly prejudiced if the case is moved to the NDCA. This includes Mr. Johnson, his sons, other Texas-based engineers that helped launch BillJCo, BillJCo's attorney, SXSW, and TI. Many of these witnesses may not travel to the NDCA for trial. And since the corporate entities will certainly not appear voluntarily, moving this case out of the subpoena range of this Court would effectively prevent BillJCo from calling them as witnesses at trial.

The public interest factors also weigh against transfer. Patent litigation in the NDCA has crawled to almost a complete stop over the course of the pandemic, and the gap between trial times in this Court and the NDCA continues to widen. Although this Court has been criticized for not considering data other than trial times, all other relevant metrics weight against transfer, including the average time to termination by means other than trial. The bottom line is that patent cases are resolved faster in this Court regardless of whether they end by trial, settlement, or motion practice.

The local interest also weighs against transfer. BillJCo is a true Texas success story, and

both parties have headquarters just over an hour away from this Court. The companies responsible for rolling out or adopting the iBeacon technology are also based in this District or Texas. The only local interest the NDCA has in this matter is that it is home to one of Apple's headquarters.

Based on the overwhelming ties to Texas, this case should be resolved in Texas. If not, Apple is essentially immune from litigation here, which is an absurd result that renders 28 U.S.C. § 1400(b) all but meaningless.

## BACKGROUND

### A.     BillJCo, LLC

BillJCo is a Texas limited liability company with its principal place of business located at 1704 Katherine Court, Flower Mound, TX 75022. Ex. A, Declaration of Bill Johnson ("Johnson Decl.") ¶ 1. Bill Johnson is the founder of BillJCo and the inventor or coinventor of all the patents at issue in this litigation. *Id.* ¶ 2. Mr. Johnson's home is in Flower Mound, Texas ████ ████████████████████████ *Id.* ¶ 4.

Mr. Johnson's story is a Texas one. He moved to the North Dallas area in Texas to take a job with TI in 1982. *Id.* ¶ 3. Mr. Johnson has worked and lived in Texas ever since. *Id.* Mr. Johnson eventually moved to Flower Mound in 1986, where he and his wife raised their family. *Id.* ¶ 4. In Dallas and Flower Mound, Mr. Johnson spent two decades working as an engineer for large corporations based in Texas (TI, Xerox, IBM, MCI). *Id.* ¶ 5. Mr. Johnson eventually left the research and development world in 2000 to start a consulting company and to focus on creating his own intellectual property. *Id.* ¶ 6. Mr. Johnson performed all of this work from his home in Flower Mound. *Id.*

Mr. Johnson's patents focus on beacon technology. *Id.* ¶ 7. Beacon technology generally relates to a class of hardware transmitters that broadcast their identifier to nearby electronic

devices where different information can be received, processed, analyzed, and presented to a user in order to enhance a user or customer experience. *Id.* Mr. Johnson tapped into his Texas corporate contacts, as well as his own family, to help get this beacon technology off the ground. *Id.* ¶ 8.

In 2004, Mr. Johnson began to work with Lev Sofman, an engineer he met at MCI, to develop location based technologies. *Id.* ¶ 9. ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Mr. Johnson sought to improve upon this LBS technology and filed applications for new patents focusing on distributed mobile applications or "Location Based eXchanges" (the "LBX Portfolio"). *Id.* ¶ 10. Mr. Johnson incorporated BillJCo to pursue opportunities relating to the LBX Portfolio. *Id.* Mr. Johnson worked on the LBX Portfolio with Craig Newman and Kevin Watson, two engineers he met at MCI, who both provided business and technical advice to BillJCo in launching LBX Portfolio implementations. *Id.* ¶ 11. ████████████████████████████ ████████████████████████████████████████████████

Mr. Johnson's sons, Michael Johnson and Jason Johnson, were also instrumental in launching BillJCo and developing the LBX Portfolio. *Id.* ¶ 12. Jason is a co-inventor of U.S. Patent 8,566,839, which is one of the asserted patents in this case. *Id.* Michael helped Mr. Johnson with software development, including a mobile development environment for building beacon applications. *Id.* ████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████ Mr. Johnson hired Craig

Yudell, a patent attorney, to assist him in the negotiations and monetization. *Id.* 

Mr. Johnson's

documents relating to the patents at issue ███████████████ are in Flower Mound. *Id.*

¶ 16.

### B.    iBeacons in Texas

In 2014, Apple provided SXSW, LLC ("SXSW"), an Austin, Texas based company, with

iBeacon technology to test its "SXSW GO app" on a limited basis. Ex. B, Declaration of Casey

Grabenstein ("Grabenstein Decl."), Exs. 1–3. SXSW operates South by Southwest, a 110 stage

and 265 venue film, media, and music festival and technology conference in Austin. *Id.*, Ex. 4.

SXSW GO is the official app and uses Bluetooth Low Energy technology, referred to as

"iBeacon" by Apple, to notify attendees when they are near an event, restaurant, bar, or other

attendees. *Id.*, Ex. 6. A year later, SXSW made a massive investment in iBeacon technology and

placed over 1,000 beacons around the Austin Convention Center. *Id.*, Exs. 4, 6, 7. It was the

world's largest iBeacon deployment at the time and the first time Apple's iBeacon technology

was used for a large-scale event. *Id.*, Exs. 1, 6. The technology sent out more than 400,000

proximity alerts to attendees. *Id.*, Exs. 8–9.

After the successful test run in 2014, SXSW invested $2 million in the company who

developed the SXSW GO app which utilizes iBeacon technology. *Id.*, Ex. 10. By going "all-in on

iBeacons," SXSW took what many considered to be a "fringe technology" and demonstrated to

over 84,000 attendees what a "beacon-filled future" would look like. *Id.*, Exs. 7, 11, 12. Scott

Wilcox, SXSW's Chief Technology Officer, and multiple articles publicly touted the Austin-

based festival's use of Apple's iBeacon technology. *See e.g., id.*, Exs. 6, 1–12 (collection of 2014 and 2015 articles describing SXSW's use of Apple iBeacon technology). SXSW, LLC and Mr. Wilcox are in Austin, Texas and still utilize iBeacon technology today. *Id.*, Exs. 5, 14.

Another early adopter of Apple's iBeacon technology was TI, a Dallas, Texas based company. *Id.*, Exs. 15, 16. In 2013, TI partnered with the Consumer Electronics Association to implement Apple's iBeacon technology. *Id.*, Ex. 18. A few months later, TI announced that it was adding iBeacon support to its catalogue of Bluetooth low energy products and development kits. *Id.*, Ex. 15. Texas Instrument added iBeacon support to its development kits in order to "speed up Bluetooth development for mobile developers." *Id.* TI also developed a new app and a "reference design" for the iBeacon system that "uses minimal power and can be manufacturers quickly for a low cost." *Id.*, Exs. 17–18. TI's press release touted how TI's support for iBeacon technology would benefit "everything from asset trackers, retail, building automation systems, automotive and industrial applications, and a wide variety of consumer electronics." *Id.*, Ex. 15.

## ARGUMENT

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The standard is not that the alternative venue is more convenient, but that it is "clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). Although the plaintiff's choice of forum is not a separate factor, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint*, 628 F.3d at 1344; *see also Atlantic Marine Const. Co. v. United States Dist. Ct. for W. Dist. Of Tex.*, 571 U.S. 49, 63 n.6 (2013) ("The Court must also give some weight to the plaintiff's choice of forum.").

6

I. **The Private Interest Factors Favor Keeping This Matter In Texas.**

A.      **The Relative Ease of Access to Sources of Proof Weighs Against Transfer.**

The access to proof factor weighs against transfer because all of BillJCo's evidence is just approximately 100 miles from this Court, and Apple has not established where its evidence is located. "In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Koss Corp. v. Apple Inc.*, No. 6-20-CV-00665-ADA, 2021 WL 5316453, at *3 (W.D. Tex. Apr. 22, 2021) (mandamus denied).

Apple argues that all of its relevant evidence is located in the NDCA and that no relevant evidence is located in Texas. Def.'s Mot. to Transfer ("Mot."), Dkt. 26 at 6. In support of this proposition, however, Apple submits only the carefully-worded declaration of Mark Rollins. Rollins Decl., Dkt. 26-1. Mr. Rollins is a serial declarant for Apple, and his declaration appears to have been copied nearly verbatim from his declarations in support of other venue motions. *Compare* Rollins Decl. ¶ 7 *with* Rollins Decl. in *Koss*, 2021 WL 5316453, at *3; *Solas OLED, Ltd. v. Apple Inc.*, No. 6:19-cv-00537-ADA, 2020 WL 3440956, at *2 (W.D. Tex. June 23, 2020); *GUI Global Prods., Ltd. v. Samsung Elecs. Co., Ltd.*, No. 4:20-CV-2624, 2021 WL 3705005, at *2, 4 (S.D. Tex. May 28, 2021); *Coronavirus Reporter v. Apple, Inc.*, No. 1:21-cv-047-LM, 2021 WL 1946428, at *2 (D.N.H. May 14, 2021).

Rollins states in paragraph 7 of his declaration that "working files and electronic documents concerning the accused features reside on local computers and/or servers either located in or around NDCA *or which are accessible in NDCA*." Rollins Decl. ¶ 7 (emphasis added). Rollins repeats this exact sentence in subsequent paragraphs. *Id.* ¶¶ 10, 14. Other courts have placed minimal reliance on these same assertions from Rollins. *See GUI Global*, 2021 WL 3705005, at *2. For example, the *GUI* court found that Rollins' assertion regarding the location

of relevant evidence failed to "explain whether Defendant's servers are, in fact, located within the Northern District of California, or whether they are merely accessible from that district." *Id.* Relying on the Federal Circuit's ruling in *In re Apple Inc.*, the court found that "[b]ased on Rollins' vague assertions as to the actual location of Defendant's physical sources of proof, the Court is unable to determine that such evidence supports transfer." *Id.* (citing *In re Apple Inc.*, 743 F.3d 1377, 1378–79 (Fed. Cir. 2014) (declining to reverse lower court's determination that "the weighing of this factor would be merely speculative," given Apple's "vague assertions and unknown relevance and location of potential sources," because the court had "simply determined that the evidence . . . was so general in nature that [it] was unable to evaluate its relevance in the transfer analysis."). Given the *GUI* court's explicit rejection of Mr. Rollins' language, the Court should scrutinize and question Apple's decision to use the exact same language here.

Even if the Court does give some minimal weight to Rollin's declaration, ██████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████ While BillJCo understands that the Court is constrained by Fifth Circuit precedent which looks to the physical location of electronic documents, any slight inconvenience Apple may encounter accessing documents from its Austin office is outweighed by the prejudice BillJCo will face if forced to move all of its documents and evidence to the NDCA for trial. Accordingly, this factor weighs against transfer.

### B.    The Availability of Compulsory Process Weighs Against Transfer.

The compulsory process factor weighs strongly against transfer since only BillJCo has identified third party witnesses that will need to be subpoenaed. In analyzing this factor, a court considers non-party witnesses whose attendance may need to be secured by a court order. *Fintiv, Inc. v. Apple, Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *14 (W.D. Tex. Sept. 13,

2019); *see Agis Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513-JRG, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018) (noting the transfer analysis considers "[a]ccess to witnesses *for presentation at trial*") (emphasis in original). A court may subpoena a witness to trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B).

Apple fails to identify any third parties that the NDCA could subpoena to trial. The only third party Apple identifies is the Bluetooth Special Interest Group ("Bluetooth SIG"), a group based in Kirkland, Washington. Mot. at 8. Kirkland, however, is over 800 miles from the NDCA. *See* Grabenstein Decl., Ex. 21. Accordingly, the compulsory factor is a non-issue for Apple because Bluetooth SIG is not within the subpoena range of the NDCA.

By contrast, BillJCo has identified SXSW LLC and Texas Instruments as relevant third-party witnesses that will need to be subpoenaed and are within the trial subpoena range of this Court. SXSW's headquarters is 101 miles from this Court and TI's headquarters is 122 miles from this Court. Grabenstein Decl., Exs. 22, 24. Accordingly, this factor weighs strongly against transfer.

### C. The Cost of Attendance and Convenience for Willing Witnesses Weighs Against Transfer.

The convenience of the willing party and non-party witnesses, the most important factor in transfer analysis, also weighs against transfer. *See HD Silicon Sols. LLC v. Microchip Tech. Inc.*, W-20-CV-01092-ADA, 2021 WL 4953884, at *5 (W.D. Tex. Oct. 25, 2021) ("The most important factor in the transfer analysis is the convenience of the witnesses.") The Fifth Circuit employs the "100-mile rule" when determining the inconvenience and cost of attendance to a

witness. *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004). The inconvenience factor "increases in direct relationship to the additional distance to be traveled." *Id*.

The Court also takes into consideration "the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, the location of those witnesses, whether the testimony of those witnesses goes to an element of a claim, the amount of public information available to the parties, etc." when weighing inconvenienced witnesses. *Fintiv*, 2019 WL 4743678, at *8.

### 1.    Apple's Witnesses

Apple identified five employee witnesses in its motion. Mot. at 3.



In addition, Apple's list of "witnesses" includes redundant witnesses who know little about the BillJCo patents or this litigation. Apple identifies two separate witnesses on the same topic: "research, design, and development of the accused features." Mot. at 3.

Apple also identifies the declarant supporting its motion, Mr. Rollins, as an additional witness. *Id*. As noted above, Mr. Rollins has served as Apple's declarant in several other recent

39066418.10.docx

cases where Apple has moved to transfer. His primary basis for serving as a witness here appears to be the fact that he has spoken with other Apple witnesses about the case. Rollins Decl., Dkt. 26-1 at ¶¶ 7-13. He also states in one paragraph that he has knowledge regarding "financial information concerning the accused products," even though he has only been with Apple since 2019, well after the infringing products were developed. *Id.* ¶¶ 1, 14. Apple has disclosed Mr. Rollins as a likely witness in other cases. *See* Grabenstein Decl., Exs. 35–37 (Rollins Decl., Dkt. 23-2 at ¶¶ 3, 16, *Solas OLED*, 2020 WL 3440956 (No. 6:19-cv-00537); Rollins Decl., Dkt. 40-1 at ¶¶ 2, 14, *GUI Global*, 2021 WL 3705005 (No. 4:20-CV-2652); Rollins Decl., Dkt. 19-2 at ¶¶ 2, 14, *Coronavirus Reporter*, 2021 WL 1946428 (No. 1:21-cv-0047-LM)). ███████████ ██████████████████████████████████████████████████████████████ In addition, Mr. Rollins does not claim to have any prior experience with the underlying technology. Rollins Decl. ¶ 14. The Court should reject Apple's attempt to use this "universal witness" as a basis for transferring cases to the NDCA.

In addition, the few actual witnesses that Apple will call can stay at "[t]he new Austin facility [which] includes a 192-room with a six-story design to house Apple employees who presumably travel to Austin for work." *Koss Corp.*, 2021 WL 5316453, at *9. As the court has explained, "the convenience of this new Austin facility, along with its existing Austin facilities, greatly minimizes the time that Apple's employees are removed from their regular work responsibilities." *Id.* Accordingly, in addition to being overstated, the burden on Apple's employee witnesses is minimal.

### 2.    BillJCo's Witnesses

Unlike Apple, BillJCo's sole headquarters is located in Texas, approximately 100 miles away from the Court. *See* Grabenstein Decl., Ex. 27. BillJCo has no offices, employees, or presence in NDCA. Johnson Decl. ¶ 17. The founder of BillJCo and its sole employee, Mr.

Johnson, will testify in this matter. If this matter is transferred to the NDCA, Mr. Johnson's testimony will be costly and inconvenient.

### 3. Third Party Witnesses

BillJCo anticipates calling at least six non-party witnesses who live and work in Texas. BillJCo's non-party witnesses were involved in the development of Mr. Johnson's beacon technology and the launching of BillJCo. Mr. Johnson's son, Jason Johnson, is a co-inventor for one of the patents at issue ████████████████████████████ Another willing nonparty witness is BillJCo's former attorney, Craig Yudell, ████████████████

████████████████████████████████████████████

████████████████████████

BillJCo also identified additional witnesses who were involved in launching BillJCo. *Id.* ¶¶ 9, 11, 12. These include Mr. Johnson's other son, Michael Johnson, as well as Lev Sofman, Craig Newman and Kevin Watson. Each witness lives and works in Texas. *Id.* Thus, shifting the location of the trial to the NDCA will be more costly and inconvenient for BillJCo's six willing non-party witnesses. Apple may attempt to argue that some of these witnesses are not located in the W.D. of Tex. but this Court is exponentially more convenient than the NDCA. Mot. at 10; *see E. Texas Boot Co., LLC v. Nike Inc.*, No. 2:16-cv-0290, 2017 WL 2859065, at *5 (E.D. Tex. Feb. 15, 2017) (finding that the convenience factor weighed against transfer because the convenience of the two non-movant, non-party witnesses located closer to the E.D. of Tex. outweighed the inconvenience to the movant's single non-party witness located in Oregon).

### D. The "All Other Practical Problems" Factor Is Neutral.

The final private interest factor relating to "all other practical problems" is neutral. "This factor considers the practical problems that make a trial easy, expeditious, and inexpensive for the private parties." *Koss Corp.*, 2021 WL 5316453, at *10. Apple contends that the factor "is

either neutral or favors transfer." Mot. at 11. The basis for Apple's argument, however, is unclear. In two sentences, Apple simply notes that (a) BillJCo has also filed cases relating to beacon technology against Cisco Systems, Inc. and Aruba Networks, Inc. in the Eastern District of Texas and (b) that these defendants are also based in the NDCA. Neither of these uncontroverted facts weigh in favor of transfer.[2]

## II. **The Public Interest Factors Favor Keeping This Matter In Texas.**

### A.   **The Administrative Difficulties Factor Weighs Against Transfer.**

"Courts evaluating this factor consider the speed with which a case can come to trial and be resolved." *Express Mobile v. Atlassian Corp.*, No. 6-20-CV-00805-ADA, 2021 WL 3355375, at *9 (W.D. Tex. Aug. 2, 2021). This Court has applied this factor in evaluating multiple motions to transfer to the NDCA. *See, e.g., id.* In *Express Mobile*, the Court explained that the pandemic has caused a slowdown in trial times in the Northern District of California compared to the W.D. Tex. *Id.* at *9-10 ("[M]ore recent data shows that for patent cases since 2016, the average time to trial in NDCA was 34.1 months."). The Court reached the same conclusion in other cases. *Triller, Inc. v. Bytedance, Ltd.*, No. 6-20-cv-00693-ADA, 2021 WL 3913589, at *7 (W.D. Tex. July 9, 2021); *Koss Corp.*, 2021 WL 5316453 at *12.

The gap between the NDCA and WDTX is only widening. The average time to trial in the NDCA has grown from 34.1 months to ***45.2 months*** based on more recent 2021 data. Grabenstein Decl., Ex. 30 at 20. The only NDCA trial commenced during the pandemic occurred on July 21, 2021, 47 months after the complaint was filed. *See Plexxikon, Inc. v. Novartis Pharmaceuticals Corp.*, No. 17-cv-4405 (N.D. Cal.). By contrast, the average time to trial in the W.D. Tex. is now 25.9 months, Grabenstein Decl., Ex. 31 at 40-41, and parties have tried

---

[2] To the extent Apple attempts to expand on its unarticulated position regarding why this factor supports transfer in its reply brief, BillJCo reserves the right to file a sur-reply addressing it.

multiple cases throughout the pandemic. *Express Mobile,* 2021 WL 3355375, at *10.

Although the time to trial is critical, the Federal Circuit has alluded to other metrics that are relevant. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *3 (Fed. Cir. Nov. 15, 2021) ("[T]he time to trial statistics provided in this case, unsupported by additional facts such as . . . the speed and availability of other case dispositions, cannot alone weigh "heavily against transfer."). Any other metrics that the Court could possibly consider also weigh heavily against transfer. Over the past five years, the average time to case termination for patent cases in this Court **is 7.2 months**. Grabenstein Decl., Ex. 31 at 2. The time to termination in the NDCA is nearly twice as long: ***13.2 months***. Grabenstein Decl., Ex. 30 at 2.

Apple relies on a 12-year 9-month period of data to argue that patent cases in the NDCA have a "shorter time to dismissal" (190 days compared to 172 days). Mot. at 12. Apple fails to explain why it chose this random period of time. In any event, the data Apple relies on relates only to "contested" dismissals in *favor of defendants*. *See* Dkt. 26-13 & Dkt. 26-14. Apple's reports also show that the median time to termination in favor o*f either party* or *via settlement* (voluntary dismissal) is actually much shorter in this Court (156 days) compared to the NDCA (238 days) over Apple's 12-year 9-month period. *Id.*

Accordingly, regardless of the metric considered, cases terminate much quicker in this Court by trial or otherwise, and the gap between this Court and the NDCA is widening at a rapid pace. The court congestion factor therefore weighs strongly against transfer.

### B.     The Local Interest Factor Strongly Favors Texas.

The local interest factor also strongly favors keeping this matter here. "[A] headquarters in a certain location gives that location a strong local interest." *Polaris Innovations, Ltd. v. Dell, Inc.*, 2016 WL 7077069, at *11 (W.D. Tex. Dec. 5, 2016) (finding the local interest factor favors transfer where defendant had headquarters near Austin); *Uniloc USA, Inc. v. Apple Inc.*, No. A-

18-CV-992-LY, 2019 WL 2035583, at *1, 4 (W.D. Tex. Apr. 8, 2019) (stating that Apple's 1.1 million square-foot campus, separate 216,000 square-foot campus, and 6,000 employees, all located in Austin, is sufficient proof to show that "Apple has a substantial presence in this district.")

BillJCo is headquartered in Flower Mound, Texas. Johnson Dec. ¶ 1. Although Apple may argue that BillJCo's headquarters is actually in the Eastern District of Texas, BillJCo's Flower Mound headquarters is just over 100 miles from Waco, and BillJCo cannot be faulted for filing suit here since BillJCo cannot sue Apple in BillJCo's home district. Grabenstein Decl., Ex. 27. Apple also has a second headquarters in Austin. *Uniloc 2017 LLC v. Apple, Inc.*, No. 6:19-cv-00532-ADA, 2020 WL 3415880, at *5–6 (W.D. Tex. June 22, 2020) (describing construction of new campus, hotel and exponential growth of Apple employees in Austin). Apple also assisted SXSW (in this district) with coordinating the largest rollout of iBeacons in the world, and SXSW continues to promote the product at its annual festival in Austin. Grabenstein Decl., Exs. 1–3 .

Given the significant ties that both BillJCo and Apple have to Texas and this District, and the fact that the iBeacon technology rollout largely occurred in Texas, there is a strong local interest in resolving this dispute here.

### C.    Familiarity With The Governing Law And Conflicts Of Law Are Neutral Factors.

BillJCo agrees with Apple that the last two public interest factors are neutral.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Apple's motion to transfer.

Dated: December 27, 2021          Respectfully submitted,

/s/ Brian Michalek
Brian R. Michalek (*pro hac vice* granted)
Casey Grabenstein (*pro hac vice* granted)
Brian Landry (*pro hac vice* granted)
Erin Westbrook (*pro hac vice* granted)
brian.michalek@saul.com
casey.grabenstein@saul.com
brian.landry@saul.com
erin.westbrook@saul.com
**Saul Ewing Arnstein & Lehr LLP**
161 N. Clark St., Suite 4200
Chicago, IL 60601
Telephone: 312-876-7100
Facsimile: 312-876-0288

*Of Counsel:*

Claire Abernathy Henry
Texas State Bar No. 24053063
E-mail: claire@wsfirm.com
Andrea L. Fair
Texas State Bar No. 24078488
E-mail: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
**Attorneys for Plaintiff BillJCo, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served via e-mail on **December 27, 2021** to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.


*/s/Brian R. Michalek*

17