IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **BILLJCO, LLC,**<br>  Plaintiff,<br><br>v.<br><br>**APPLE INC.,**<br>  Defendant. | 6:21-cv-00528-ADA |

### [AMENDED] MEMORANDUM OPINION & ORDER DENYING DEFENDANT APPLE INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) [ECF No. 26]

Came on for consideration this date is Defendant Apple Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). ECF No. 26 (the "Motion"). Plaintiff BillJCo, LLC filed an opposition on December 27, 2021, ECF No. 33, to which Google replied on January 10, 2022, ECF No. 37. BillJCo also filed a Notice of Supplemental Authority on February 16, 2022. ECF No. 48. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **DENIES** Apple's Motion.[1]

## I. BACKGROUND

BillJCo filed suit on May 25, 2021, accusing a variety of Apple iPhones and iPads (the "Accused Products") of infringing U.S. Patent Nos. 8,566,839 (the '839 Patent); 8,639,267 (the '267 Patent); 8,761,804 (the '804 Patent); 9,088,868 (the '868 Patent); 10,292,011 (the '011 Patent); and 10,477,994 (the '994 Patent) (collectively the "Asserted Patents") based on BillJCo's assertion that the Accused Products "conform to and implement the iBeacon protocol and infringe the Patents-in-Suit." ECF No. 1 (the "Complaint") ¶¶ 36–37. According to BillJCo, the asserted

---

[1] This Amended Order **VACATES** and **SUPERSEDES** the Order at ECF No. 49. This Amended Order merely corrects an error in the final sentence of ECF No. 49.

1

patents "relate to specific and particularized inventions for, and associated with, this beacon technology and the related protocols and specifications which facilitate and enable aspects of the beacon technology ecosystem including devices capable of implementing beacon standards and specifications, manufacturers of beacon transmitting devices, application developers, and beacon deployers." *Id.* ¶ 21. BillJCo's Complaint accuses iOS products, such as iPhones and iPads, that allegedly "conform to and implement the iBeacon protocol." *Id.* ¶ 36.

Apple is a California corporation, employing more than 35,000 people who work in or around its headquarters in Cupertino. *See* ECF No. 26-1 (the "Rollins Affidavit") ¶ 3.

BillJCo is Texas limited liability corporation headquartered in Flower Mound, Texas, and founded by Bill Johnson. ECF No. 1 ¶ 4. ███████████████████████████

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
████████████████████████████████████████████████.

    ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
█████████████████████████████████

Apple has moved to transfer this case to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a), alleging that it is more convenient than this District. That Motion is now ripe for judgment.

## II. LEGAL STANDARD

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law

that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

#### A. Venue and Jurisdiction in the Transferee Forum

This Court finds, and BillJCo does not contest, that this Action could have been brought in the NDCA.

**B.     Private Interest Factors**

1.     Relative Ease of Access to Source of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019). This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340.

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having persistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of physical documents and other evidence; and the hardware storing the relevant electronic documents. *See, e.g.*, *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021), *vacated on other grounds*, *In re Pandora Media, LLC*, No. 2021-172, 2021 U.S. App. LEXIS 30963 (Fed. Cir. Oct. 13, 2021).

BillJCo asserts all its evidence is "100 miles away from this Court," at BillJCo's headquarters in Flower Mound. ECF No. 33 at 3, 6. Apple argues that "BillJCo's physical documents in the EDTX do not warrant keeping this case in the WDTX." ECF No. 37 at 1. Given Flower Mound's proximity to this Court, it is easier to access BillJCo's evidence from Waco than it would be from the NDCA. This weighs against transfer.

Yet Apple has also shown that its documents are relatively easier to access in the NDCA. Apple states that its "witnesses with knowledge potentially relevant to this case—software engineers, product managers, marketing, licensing, and finance personnel—have all confirmed that Apple's relevant documents are in California." ECF No. 26 at 6 (citing ECF No. 26-1 ¶¶ 7–14). More specifically, "the overwhelming majority of the research, design, and development of the accused features took place, and continues to take place, at Apple's Cupertino headquarters, with only a handful of team members located in other states." *Id.* at 7. And Apple's licensing documents and "documents concerning the marketing, sales and financial information for the accused products are all located in or around Cupertino." *Id.*

In support of these contentions, Apple cites to the Rollins Affidavit, in which Mark Rollins, a Finance Manager with Apple, attests that "working files and electronic documents concerning the accused features reside on local computers and/or servers either located in or around NDCA or which are accessible in NDCA." ECF No. 26-1 ¶ 7. The imprecision of this representation encompasses a scenario in which Apple's documents are not located in the NDCA at all, but are merely accessible there. Moreover, none of the Apple personnel BillJCo deposed testified that these documents are not also accessible from Texas. *See, e.g.*, ECF No. 37-1 at 26:16–19. They did, however, testify that it is more difficult to access documents in Texas compared to California, primarily due to slow internet or latency issues. *Id.* at 26:6–15; ECF No. 37-2 at 6–19; ECF No. 37-3 at 25:2–26:16. One Apple employee further testified that he worked with hard copy documents in California. *Id.* at 26:20–24. Yet another testified that Apple does not "tend to use hard copy documents very often." ECF No. 37-3 at 25. And Apple's interrogatory responses failed to identify any relevant, physical evidence in Cupertino. *See* ECF No. 33-3 at 8.

In view of these representations, the Court is not convinced that there is much physical evidence, if any, located in the NDCA. This witness testimony shows, however, that it is easier to access Apple's electronic documents from the NDCA than from this District. This weighs in favor of transfer. *See Volkswagen II*, 545 F.3d at 316 (focusing on *relative* ease of access to sources of proof); *In re Dish*, 2021 U.S. App. LEXIS 31759, at *6 (same). Yet Apple's witnesses' testimony only establishes that the difference in accessibility between the WDTX and the NDCA is a degree of lag. Apple has not shown that this is more than a minor inconvenience (or that lag affects documents accessed from Apple's Austin campus), so the weight accorded to Apple's electronic documents is diminished. On the other hand, the Court recognizes that, because most relevant evidence emanates from the defendant, the weight accorded to Apple's electronic documents exceeds that owed to BillJCo's evidence in Flower Mound (the extent of which BillJCo has not opined upon).

Apple further alleges that the relevant source code is maintained in the NDCA, "controlled on a need-to-know basis," and is available for inspection in the NDCA. ECF No. 26 at 7; ECF No. 37 at 1. This, Apple contends, favors transfer. ECF No. 26 at 7. The Court accords this little weight. Apple personnel testified that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ To the extent Apple demands that source code inspection occur exclusively in the NDCA, it is unclear why the convenience analysis should consider that. Such confidentiality restrictions affect only BillJCo's technical expert and counsel; their convenience is accorded little to no weight in the § 1404(a) analysis. Even if it was owed substantial weight, Apple has not explained how transfer affects the inconvenience visited upon BillJCo's experts and counsel when source-code inspection is limited to the NDCA.

7

Finally, Apple asserts that the standards development organization ("SDO") overseeing the development of Bluetooth standards is in Kirkland, Washington. ECF No. 26 at 7. Apple expects the SDO to have relevant documents because BillJCo alleges that the patents cover technology within the Bluetooth Low Energy ("BLE") standard. *Id.* This favors of transfer.

Most of the relevant evidence will come from the accused infringer. *See In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009); *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). And because Apple's electronic evidence is more easily accessible from the NDCA than from this District, this factor favors transfer. A Washington-based SDO's possession of documents relevant to the claimed technology bolsters this finding. Yet this factor does not heavily favor transfer because BillJCo houses relevant evidence at its Flower Mound headquarters not far from Waco.

### 2.     Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). Further, this Court cannot "discount" third-party entities having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

BillJCo identifies several non-party witnesses within this Court's subpoena power. BillJCo names Michael Johnson, Lev Sofman, Craig Newman, and Kevin Watson as Texas-based witnesses with relevant knowledge. ECF No. 33 at 12; ECF No. 33-1 ¶¶ 10–13. The Johnson Affidavit states that Mr. Sofman helped Bill Johnson develop software covered by the Asserted Patents. ECF No. 33-1 ¶ 9. Mr. Newman and Mr. Watson allegedly "provided business and technical advice to BillJCo in launching" the LBX Portfolio. *Id.* ¶ 11. Michael Johnson was, in Bill Johnson's estimation, "instrumental in launching BillJCo and developing the LBX Portfolio." *Id.* ¶ 12. Yet BillJCo does not explain what knowledge these potential witnesses have that is relevant to any claim or defense at issue. *See* ECF No. 37 at 2. The Court will not guess at that relevant knowledge; their convenience is disregarded.

BillJCo further alleges that SXSW LLC and Texas Instruments employ relevant third-party witnesses. ECF No. 33 at 9. According to BillJCo, Apple "assisted" Austin-based SXSW "with

9

the largest rollout of iBeacon technology in the world, and SXSW continues to serve as a showcase event for Apple's iBeacon technology." *Id.* at 1. BillJCo also represents that Dallas-based Texas Instruments was an "early adopter of the iBeacon technology." *Id.* Yet BillJCo does not offer any suggestion as to what knowledge a SXSW or Texas Instrument employee may have relevant to a claim or defense in this litigation. *See* ECF No. 37 at 1–2. Again, this Court will not guess at the relevant knowledge these witnesses possess and therefore disregards their convenience. (The Court is also confident in Apple's ability to identify customers in California with similar knowledge to that which SXSW of Texas Instruments may offer.)

BillJCo argues that Austin-based Craig Yudell, BillJCo's former attorney who attempted to negotiate the sale of the portfolio to Apple, has relevant knowledge and will be inconvenienced by transfer. ECF No. 37 at 2. BillJCo alleges that Mr. Yudell may have relevant information because BillJCo's negotiations with Apple form the basis of BillJCo's willful infringement claim. *Id.* Apple responds that one of its former employees, Edward Scott, was party to the same negotiations and resides in the NDCA. *Id.* The Court is content that Mr. Yudell and Mr. Scott neutralize one another, if their testimony is even relevant.

Finally, BillJCo notes that Jason Johnson, one of the inventors of the asserted patents, lives in Waco. ECF No. 33 at 12. As a named inventor, the Court presumes that Jason Johnson possesses relevant information, especially about inventorship. And there is no indication that BillJCo can compel him to testify. This Court can. Mr. Johnson breaks the tie here—this factor favors maintaining this Action in this District.

Apple argues that BillJCo fails to identify "any unique evidence that [Jason Johnson] has that would not otherwise be provided by . . . Bill Johnson." ECF No. 37 at 3. The Court will not hold that one joint inventor cannot have any relevant knowledge not possessed by another joint

inventor, especially when it comes to inventorship. In any event, the Court will not hold BillJCo to a standard Apple is not held to—Apple has not clearly indicated what unique evidence each of its technical personnel, referenced *infra*, possess, yet the Court has not discounted their convenience.

### 3. Cost of Attendance of Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *17. The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has held that, where witnesses would be required to travel a significant distance no matter where they testify, those witnesses will only be slightly more inconvenienced by having to travel to, for example, California, compared to Texas. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317); *In re Genentech*, 566 F.3d at 1344 (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses). It has opined elsewhere that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d at 1340; *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *12 (Fed. Cir. Sept. 27, 2021) ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."). And, in yet other cases, it has considered only hypothetical travel-time statistics, and not distance, under this factor. *See, e.g.*, *In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *12.

The Federal Circuit has recognized that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's wishes)." *In re Hulu,* No. 2021 U.S. App. LEXIS 22723, at *13. Elsewhere it has stated that inconvenience is not attenuated *at all* when the witnesses are employees of the party calling them. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021).

BillJCo's sole employee, Mr. Bill Johnson, is in Texas. *See* ECF No. 33 at 11; ECF No. 37 at 3. Even though Mr. Johnson may not reside within this District, Waco sits 100 miles apart from BillJCo's headquarters in Flower Mound. Transfer would greatly inconvenience Mr. Johnson. Apple essentially asks the Court to disregard Mr. Johnson's convenience because he resides in the EDTX instead of this District. ECF No. 26 at 10. The Court will not ignore Mr. Johnson's convenience merely because he lives 100 miles North of Waco, in the EDTX, instead of 100 miles South of Waco, in this District. To hold otherwise would place form over substance.

Apple has shown that its relevant personnel, all within California, would be inconvenienced if this Action remains in this District. Apple argues that because it developed the accused products "primarily" in Cupertino, likely witnesses are located in the NDCA. ECF No. 26 at 9. Witnesses knowledgeable about licensing information and "marketing, sales and financial information for the accused products" are also located in Cupertino. *Id.* Apple specifically identifies:

- Rob Mayor, a Software Development Engineering Director who, along with his team was responsible for the research, design, and development of iBeacon technology. ECF No. 26-1 ¶¶ 7–14.

12

- Jason Giles, a Software Development Engineering Director who, along with his team, have been involved in supporting BLE in certain of the Accused Products. *Id.*

- Wiley Hodges, a Product Management Director who, along with his team, are responsible for marketing Apple's Accused Products. *Id.*

- Jeffrey Lasker, a Principal Counsel in the IP Transactions group at Apple, who, along with his team, are responsible for intellectual property licensing at Apple. *Id.*

- Mr. Rollins himself, who is "knowledgeable about Apple's sales and financial information concerning the" Accused Products. *Id.*

Apple further notes that NDCA-based Elaine Wong, an Apple employee, was involved in the pre-suit communications between BillJCo and Apple. ECF No. 37 at 2.

BillJCo challenges the number of personnel Apple named as witnesses, arguing that Apple "has only presented an average of 2.33 fact witnesses in patent trials over the past two years, reaffirming that in patent cases, the vast majority of testimony comes from retained expert witnesses." ECF No. 33 at 10. BillJCo further chastises Apple for naming two witnesses on the same topic—research, design, and development of the accused features. *Id.* The Federal Circuit has cautioned this Court from "substitut[ing] its own assumption that . . . witnesses are unlikely to testify in place of specific reasons to believe that the . . . witnesses would be relevant." *In re Atlassian Corp. PLC*, No. 2021-177, 2021 U.S. App. LEXIS 33790, at *6 (Fed. Cir. Nov. 15, 2021). That guidance dissuades the Court from assuming on these facts that Apple will not call each of the identified witnesses on the stand in this case.

In addition, BillJCo proposes that the Court should disregard Mr. Rollins, labeling him a "universal witness" whom Apple has identified as a likely witness in several cases involving different technologies. ECF No. 33 at 11. BillJCo also notes that Mr. Rollins has not yet appeared

13

as a live witness at any trial. *Id.* This Court is, of course, vigilant against gamesmanship, but BillJCo presents no evidence that when Mr. Rollins comes about his knowledge of "sales and financial information concerning the accused products," it is for the purpose of distorting the § 1404(a) analysis ECF No. 26-1 ¶ 14. The Court will not, therefore, disregard Mr. Rollins under this factor.

But, as this Court has opined upon before, Apple's increasing footprint in this District reduces any inconvenience upon Apple personnel traveling from Cupertino. Apple plans to add to its existing space in Austin by constructing a 3-million-square-foot Austin campus, including a 192-room hotel meant to house Apple employees traveling for work. *See Koss Corp. v. Apple Inc.*, No. 6-20-CV-00665-ADA, 2021 WL 5316453, at *9 (W.D. Tex. Apr. 22, 2021). That new facility is scheduled to open in 2022, well before trial is scheduled in this Action. This Court:

> strongly believes that the convenience of this new Austin facility, along with its existing Austin facilities, greatly minimizes the time that Apple's employees are removed from their regular work responsibilities. Additionally, travel time from this work site to the Court facility would be comparable, if not less, than the travel time from Apple employees California work sites to a NDCA courthouse.

*Id.*

While BillJCo has one willing witness just beyond the District line, Apple has several in the NDCA. This factor, therefore, favors transfer. But not heavily, at least because Apple's burgeoning Austin campus attenuates the inconvenience that a Waco trial visits upon Apple's NDCA-based personnel.

    4.     Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when

ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

Apple contends that this factor favors transfer, relying heavily on BillJCo's prosecution of two other infringement actions in the Eastern District of Texas ("EDTX"). BillJCo has sued Cisco Systems, Inc. and Hewlett-Packard Enterprise in the EDTX, accusing them of infringing some of the Asserted Patents. *See* ECF No. 37 at 4. Apple first contends that BillJCo's prosecution of these cases in the EDTX betrays BillJCo's comfort in litigating infringement actions in multiple fora. From this, Apple concludes that BillJCo cannot "complain about" transfer. ECF No. 26 at 11–12. Apple is willing to defend other cases in this District; should it be precluded from seeking to

transfer this Action elsewhere? The Court thinks not. Likewise, BillJCo's willingness to litigate in two venues in Texas does not mean it is convenient for BillJCo to litigate in *any* forum.

Apple also contends that transferring this Action along with the EDTX actions to the NDCA serves judicial economy and favors transfer under this factor. ECF No. 37 at 4. Apple argues that "[i]t would be much more efficient and economical to have all of these cases adjudicated by a single judge in the NDCA." *Id.* The defendants in the EDTX actions had filed motions to transfer the EDTX actions to the NDCA, but Judge Gilstrap denied those motions on February 16, 2022. *See* ECF No. 48. Apple's argument is, therefore, moot. But even if the EDTX defendants intend to file petitions for mandamus from those denials, this Court has no assurance the Federal Circuit will grant court. This Court will not have the fate of this factor rest entirely on events outside of this Court's control that may not come to pass. This factor is neutral.

### C. Public Interest Factors

#### 1. Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and/ economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit has held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. In another case, it has opined that a "proper" analysis

16

"looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021).

Apple argues that this Court is more congested because there are more pending patent case here than in the NDCA. ECF No. 26 at 12. It should come as no surprise to either party that federal judges preside over more than just patent cases. BillJCo has cited statistics showing that the average time to trial in patent cases in the NDCA is now 45.2 months but 25.9 months in this District. ECF No. 33 at 13. This timing is consistent with data showing that this Court has brought patent cases to trial in approximately two years. *See Kajeet, Inc. v. Trend Micro, Inc.*, No. 6:21-CV-389-ADA, 2022 U.S. Dist. LEXIS 6603, at *22 (W.D. Tex. Jan. 12, 2022) (collecting cases). The Court is satisfied that, based on these statistics, this case "can come to trial and be resolved" sooner here than in the NDCA. *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. As such, this factor favors keeping this case in this District.[2]

 2. <u>Local Interests</u>

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction."

---

[2] The Federal Circuit has also held that, where the plaintiff is "not engaged in the manufacture or sale of products that practice the asserted patents," the court must "point to any reason that a more rapid disposition of the case that might be available in Texas is worthy of important weight." *In re Juniper Networks*, 14 F.4th at 1322; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380–81 (Fed. Cir. 2021). To the extent it is argued that BillJCo is not practicing the claimed inventions, BillJCo is still be entitled to the swift vindication of its property rights. The Federal Circuit has long held that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. GMC*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). And Congress itself has acknowledged the importance of the "quick" and inexpensive resolution of patent disputes, going so far as to erect a sprawling administrative regime—that does not differentiate between worked and unworked patents—for that purpose. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). Consistent with such expressions of public policy, the public has an interest in the rapid resolution of patent disputes (without reference to whether the patent is being worked).

*In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Where the movant has a "significant presence" in the transferor forum, this factor "heavily" favors transfer where the transferee forum has a "significant connection to the event that gave rise to [the] suit." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *14–15. Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

Events giving rise to this Action occurred in both venues. Apple argues that this factor favors transfer because "Apple's work on the research, design, development, and operating of the accused features primarily takes place" in the NDCA. ECF No. 26 at 13. These events give rise to this Action. BillJCo asserts that this factor favors maintaining this suit here because BillJCo is headquartered in Flower Mound, Texas, just over 100 miles from Waco. But for that conduct, BillJCo's patents would not have issued and this Action would not exist. That development is a significant event giving rise to this Action.

The scales would be balanced were it not for Apple's substantial general presence in this District. This Court has previously found that this District houses Apple's second largest U.S. campus, from which 6,000 Apple personnel work. *Koss Corp. v. Apple Inc.*, No. 6-20-CV-00665-ADA, 2021 U.S. Dist. LEXIS 222697, at *43 (W.D. Tex. Apr. 22, 2021); *see also Uniloc USA, Inc. v. Apple Inc.*, No. A-18-CV-992-LY, 2019 WL 2035583, at *1, 4 (W.D. Tex. Apr. 8, 2019) (stating that Apple's 1.1 million square-foot campus, separate 216,000 square-foot campus, and 6,000 employees, all located in Austin, is sufficient proof to show that "Apple has a substantial presence in this district"). BillJCo is headquartered in Flower Mound, so it too has a substantial presence in Texas. There is no evidence that this presence is recent and ephemeral; it will not be disregarded. Critically, BillJCo has no presence in California.

BillJCo and Apple both maintain a significant presence in Texas, a state that also possesses a specific, localized interest in this Action. This factor, therefore, at least slightly favors maintaining this Action here.

### 3. Familiarity of the Forum with Law-At-Issue

The Parties do not dispute that this factor is neutral and the Court agrees.

### 4. Conflict of Laws

The Parties do not dispute that this factor is neutral and the Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Weighs in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs against transfer |
| Cost of attendance for willing witnesses | Weighs in favor of transfer |

19

| | |
|---|---|
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Weighs slightly against transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

The sources-of-proof and willing-witnesses factors favor transfer, while the compulsory-process, court congestion, and local interest factors favor maintaining this Action here (though the last only slightly so). All other factors are neutral. Apple has identified several of its personnel in the NDCA and BillJCo's sole member resides not far from Waco, in Flower Mound, Texas, where the patented inventions were developed. Moreover, one of the co-inventors resides in Waco. This is not a case where "there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum." *In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *12. The Court is not satisfied that, on these facts, Apple has satisfied its burden in showing that the NDCA is clearly more convenient than this District. Apple's Motion is therefore **DENIED**.

SIGNED this 1st day of March, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE